Tignor *v.* Allen and Garcia Co. et al., Appellants.

Argued April 15, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE and PARKER, JJ.

*Murray J. Jordan,* and with him *Fred J. Jordan,* for appellants.

*R. M. Steffler,* and with him *Addison Lyon,* for appellee.

OPINION BY KELLER, J., July 14, 1932:

On January 17, 1930, Hatton S. Tignor while working for Allen & Garcia Company suffered an accident which cut off the fleshy part of his left forefinger, exposing the bone. An infection developed and on January 21st he went to a hospital where part of the first phalanx of the finger was amputated the next day. Before the operation he underwent the usual examination and was found to be sound as to lungs and heart —no signs or symptoms of myocardial weakness. The day following the operation he developed bronchial pneumonia, which the surgeon in charge was disposed to attribute to a collapse of the right lung following anesthesia. After the pneumonia had cleared up it was found that the finger was infected and discharging pus, which grew worse until on February 18th a second amputation was performed, cutting off the rest of the first, and the middle phalanx of the finger. He was discharged from the hospital on March 3d, but his finger was not then fully healed and was not completely healed at the time of his death. The assistant surgeon, called by the defendant, testified that "his weakness and general debility resulting from an infection of that nature would have required hospitalization for some time after [he was clear of the pneu-

monia] until he was strong enough." He went back to work on March 13th, but after the accident was not "exactly healthy," as the defendant's superintendent expressed it, while before he "was always healthy; never missed any work." He died on his employer's premises on the morning of April 11th, just before starting to work, of acute heart failure. Dr. Carman, who was present when he died, so diagnosed it, and testified that in his professional opinion the heart trouble was due to the infection following the injury, and that there was a direct causal connection between the injury and the death. Dr. Landon, the surgeon, testified that he did not know what caused the death, but admitted that he found no cardiac trouble prior to the first operation; and that the patient's high temperature while in the hospital was probably due to absorption of infection from the injured finger. Dr. Griffiths, another witness for the claimant, testified that the heart failure was probably due to an embolus,—which Dr. Carman had ascribed to the infection in the finger. He said that ordinarily a patient could leave the hospital, in two or three days or a week after an operation of this character. Dr. McConnell, the assistant surgeon, called by the defendant, did not give any opinion as to what caused Tignor's death; said that the injury to the finger "was a local condition," which was also stated by Doctors Landon and Griffiths; that there was no evidence of any blood stream infection when Tignor left the hospital; but he admitted that on January 26th there was a blood count of 9950, which indicated the "presence of infection."

The referee found as a fact that there was a direct causal connection between the injury and the death, and awarded compensation.

On appeal, the board reversed the referee, saying, after reviewing Dr. Carman's testimony: "This is the only medical evidence in the case to support the

referee's award. Dr. Carman saw the decedent on this one occasion only; and the doctors who treated him for his injury all testified that it was a local condition, and that there was nothing in the finger condition to account for death. On all the evidence in the case we set aside the referee's finding to the contrary, and find as a fact that decedent's death did not result from the accidental injury sustained by him on January 17, 1930."

On appeal to the court of common pleas, the court pointed out that the action of the board in reversing the referee was based on the finding, that "the doctors who treated him for his injury all testified ...... there was nothing in the finger condition to account for death," and said: "This finding was incorrect for no physician so testified ...... What the board had to determine was whether claimant had met the burden of proof by showing causal connection, and this necessitated its determining whether it would accept the testimony of Dr. Carman. Instead, without directly accepting or rejecting his conclusion, the board erroneously reached a conclusion opposite to his by relying on the supposed testimony of the other physicians, which in fact was not to be found in the record." The court accordingly remitted the record to the board for a specific finding as to whether it accepted or rejected Dr. Carman's testimony.

The board on reconsideration of the evidence made a specific finding that it accepted Dr. Carman's evidence, and found a direct causal connection between the accident and the death. Overlooking the fact that the record had only been remitted for more specific findings of fact and that the appeal was, in consequence, still pending in the common pleas and the record, therefore, had to be sent back to that court,

(Driscoll v. McAlister Bros., 294 Pa. 169), the board also reversed and set aside its previous order and restored to effectiveness the findings of fact, conclusions of law and award of compensation filed by the referee, but this was a mere procedural error which was corrected by the court.

It is true that between the time of the board's original order and its finding of more specific facts, pursuant to directions of the court, a new board had been appointed, but this is immaterial. Just as in the case of a court, the work of the board goes on irrespective of changes in its personnel. In Kneedler v. Lane, 45 Pa. 238, a decree of the Supreme Court holding the "Draft Act" of 1863 to be unconstitutional (3 Grant 465), was reversed by the same court after a change in its membership.

The board having made a specific finding that there was a causal connection between the accident to Tignor and his death, and there being evidence to support the finding, within the rule enunciated by the Supreme Court, the court was obliged to apply the law to the facts, and reverse the original order of the board, sustain the award of the referee and enter judgment accordingly.

The assignments of error are overruled and the judgment is affirmed.